ABRAHAM KENNEDY, Respondent, *v.* NORTH MISSOURI RAILROAD COMPANY, Appellant.

1. *Railroads.—Damages—Negligence.*—Negligence is the want of that care which men of common sense and common prudence ordinarily exercise in like employments. Railroad companies, owing to the dangerous character of the machinery and vehicles which they operate, will be held to the greatest caution and skill in the management of their business : but this will not exonerate others who are wanting in prudence or guilty of negligence.

2. *Practice—Negligence.*—The question of negligence is one of fact to be submitted to the jury.

3. *Practice — New Trial — Excessive Damages.*—The Supreme Court will not grant a new trial upon the ground of excessive damages, unless it appears at first blush that the damages are flagrantly excessive, or that the jury have been influenced by passion, prejudice or partiality.

4. *Damages, exemplary.*—To authorize the giving of exemplary damages, malice, violence, oppression, or wanton recklessness, must be proven.

5. *Practice — Instructions.* — Courts should not state propositions of law hypothetically to a jury, where there is no evidence in the case applicable to them.

| | |
|---|---|
| 36 | 351 |
| 31a | 381 |
| 33a | 23 |
| 36 | 351 |
| 46a | 294 |
| 36 | 351 |
| 48a | 201 |
| 36 | 351 |
| 116 | 165 |
| 36 | 351 |
| 123 | 247 |
| 123 | 262 |
| 36 | 351 |
| 68a | 323 |
| 36 | 351 |
| 168 | 1548 |
| 36 | 351 |
| 102a | 4325 |
| 102a | 4616 |

### Appeal from St. Charles Circuit Court.

This suit was brought in the St. Charles Circuit Court in 1861, and was tried there upon an amended petition filed on the 18th of May, 1864, which stated that the defendant—a corporation chartered in 1851 — built a railroad through Warren county, which passed over and through the plaintiff's farm, cutting off his residence from his water and timber, and that the defendant wilfully, maliciously and negligently failed to make the plaintiff a safe and good crossing over the railroad track; that the defendant offered to make a safe and good crossing above the tops of the cars, by putting a bridge over the track where there was a cut of sufficient depth for a bridge, and that defendant wilfully, maliciously and negligently failed and refused to build for plaintiff a crossing that could be crossed without great risk, particularly when coming from the north to the south side, as the cars could not be seen coming from the east until you are upon the track, the crossing being at the west end of a deep cut; that on the 22d day of October, 1860, while the plaintiff was coming from the north part of his land with his wagon and team, with three barrels of water and his daughter,— in crossing the track, his wagon and team, his daughter and himself, were struck by the train going west, the wagon broken, his daughter and both horses killed, and himself so bruised and crippled that he had to call a physician and expend a large sum of money to be cured : all which was caused and occasioned by the negligence and unskilfulness, criminal intent, carelessness and incompetency of the officers, agents, servants and employees of defendant whilst running and conducting and managing the locomotives, cars and trains of cars of defendant, and by reason of the failure of defendant, its agent and employees, to erect and maintain a proper and suitable farm-crossing across said railroad, whereby he was damaged in the sum of ten thousand dollars.

The answer admitted the construction of the railroad through the plaintiff's farm, as they had a lawful right to do

(having acquired the right of way), but denied that they had failed to make the plaintiff a safe and good crossing for the use of his farm, and averred that they had made him a good and sufficient farm-crossing, at his request and at the place selected and designated by himself when the railroad was built, and that it was a good, adequate and sufficient farm-crossing, which could be used with safety and convenience by the exercise of ordinary care and prudence, and that the same had been used by the plaintiff from the year 1857 down to the time of the accident; it ignored the injury and required proof; and it denied that the accident and injury were caused or occasioned by any negligence, unskilfulness, criminal intent, carelessness or incompetency of any officer, agent or employee of the defendant whilst running, conducting or managing the trains, or by any failure on its part to build and maintain a suitable farm-crossing for plaintiff's use; and denied all damage in the premises.

The case shown by the evidence was nearly as follows:— About eight o'clock in the morning of the 22d of October, 1860, a passenger train was moving westwardly on time at the usual rate of speed (15 to 20 miles an hour), and was passing through a cut ten feet deep on a straight line of track with ascending grade, approaching a farm-crossing on the plaintiff's farm, the engineer, conductor and brakesman being all at their posts and on the alert. At the same time, the plaintiff and his daughter, a woman grown, in a wagon with three barrels of water and two horses, were approaching the crossing from the north side on a farm road leading from the spring to the house on the farm, while a hill or low ridge on his left intercepted his view of the track and coming train, and also the view from the train, until he should be within twenty feet of the crossing. He knew it was about time for the train to be passing, but, being in some hurry, thought he could get over before the train would come; and he drove right on without stopping to listen, or to get out of his wagon and look up and down the track, before venturing to drive over. When the train got within a quarter of a mile of the

next station (at Wright City) beyond the crossing, and while as yet more than 200 yards distant from the crossing, and before the horses and wagon came in sight of those on the train looking out through the cut, the fireman (as usual) had begun to ring the bell as a signal for the station, and the brakesman at the rear end of the train was looking out for the station, when he, the fireman, and the engineer, almost at the same instant, caught sight of the horses' heads coming into view within twenty feet of the track. The engineer instantly whistled the signal for "down brakes" and reversed his engine, and every possible effort was made to stop the train. The horses had got upon the crossing, and there stood immovable with terror. The plaintiff tried first to drive them over, and then to back them off, but could do neither; and they were immediately struck.

It was proved that the horses, worth some $200, were killed, the wagon damaged to the amount of $25, the plaintiff somewhat bruised, and the woman killed; and that the plaintiff, though he was able to attend the funeral of his daughter, was for some time unable to work as usual, and had paid a small sum for doctor's bill; but did not appear to have been seriously injured. The crossing was in a good state of repair, nor did it appear that the accident was attributable at all to any defect or difficulty with the crossing itself.

It also appeared that it was not the practice or custom, on this or other railroads, to give a signal by bell or whistle for a private farm-crossing, and none was given specially for this crossing, on this occasion, otherwise than as above stated.

It was in evidence that a person standing on or near to the crossing could see half a mile and more down the track in the direction in which the train was coming; that the crossing had been made where it was at the instance of the plaintiff himself in 1857, and that he had used it ever since; that, on the whole, it was the best location on the farm for a crossing, unless a bridge were to be built over the cut; that the defendant had long before offered to build a bridge if plaintiff would pay the expense, as was usual in such cases,

and that he had refused; that the crossing was a safe and good one if used with ordinary care and prudence, and was built in the same manner as other farm-crossings; and several intelligent witnesses testified, that, under such circumstances and at such a time, they would, and they thought any man of ordinary care and prudence would, stop and listen, and get out and look up and down the track, before venturing to drive over.

It was in evidence that the defendant had acquired the right of way through this farm and made compensation to the plaintiff therefor.

Plaintiff offered evidence to show that there was a crossing of a public highway over the railroad a mile or more to the eastward of this farm-crossing, and that the employees on the train had not rung the signal bell for that public road-crossing—some witnesses, over a mile off at the time, stating that they had not heard the bill ring.

Plaintiff offered evidence to show that a bridge could have been built over the cut for a farm-crossing, and that such a crossing would have been safer.

The following instructions were given for the plaintiff, and the defendant excepted :

1. If the jury believe from the evidence that the plaintiff has sustained injuries to his person and property by reason of the negligence or unskilfulness of the officers or employees of defendant whilst running, conducting or managing any locomotive, car, or train of cars, on the railroad of defendant, then they will find for the plaintiff, and assess his damages at such sum as they consider sufficient to compensate him for such injuries, not exceeding ten thousand dollars.

2. If the jury find from the evidence that in the construction of defendant's railroad, and in the location and construction of the crossing at which the accident occurred, there was negligence or unskilfulness on the part of the officers, agents or employees of the railroad company, and that by reason of such negligence or unskilfulness the plaintiff, while using the crossing with his wagon, was unable to perceive the approach

of the train of cars in time to avoid being run over, and was immediately, in consequence thereof, struck by the locomotive and sustained injuries to his person or property, then the jury will find for the plaintiff and assess his damages accordingly, unless the jury also believe from the evidence that there was negligence on the part of the plaintiff.

3. In estimating the amount of care and circumspection which a party ought to exercise in order to avoid inflicting injury upon others, it is proper to take into consideration the nature and extent of the injury liable to be caused by the absence of such care and circumspection; and hence, from the known destructive effects of railroad collisions, the agents and officers of railroad companies are held to a greater degree of care and circumspection in running their trains than the drivers of ordinary vehicles on common roads; and if the jury believe from the evidence that owing to the location and construction of the crossing, and the topography of the adjacent localities, more than ordinary care ought to have been used by the persons in charge of the train in approaching that point, either by sounding a signal, by lessening the speed of the train, or by any other means calculated to avert a collision, and that no such special or extraordinary care was taken or means used on that occasion, then the jury are authorized to infer negligence on the part of the defendant, and the plaintiff is entitled to recover, unless the jury also believe from the evidence that there was negligence on the part of the plaintiff.

4. It is the duty of defendant to commence ringing the bell, or blowing the whistle, at a distance of eighty rods from the crossing of any public travelled road or highway, and to keep ringing the bell or sounding the whistle at intervals until the train has crossed such road or highway; and if it appears from the evidence that at the time of the accident no bell was rung or whistle blown, as above required, at or near the crossing of a public travelled road or highway in the vicinity of the scene of the catastrophe, and that if such bell had been rung, or whistle blown, a warning could have

been conveyed in time to plaintiff, whereby the calamity and injury might have been averted, then these are facts from which the jury may infer negligence or unskilfulness in the officers, agents or employees of the railroad company in the running and managing of the train, and their verdict will be rendered accordingly.

5. It is the duty of the railroad company to erect and maintain proper and suitable farm-crossings for the use of owners of land adjoining the railroad, and if defendant failed to erect and maintain a proper and suitable farm-crossing for plaintiff, or did make a crossing where the calamity occurred, which was so located and constructed as to be hazardous and dangerous to persons crossing, and that but for the unskilful and dangerous manner in which the crossing was located and constructed the casualty might not have occurred, then these are facts which the jury are authorized to consider in determining the question of negligence or unskilfulness on the part of defendant which may render defendant liable on this action.

[See opinion for 6th instruction.]

Defendant asked the following instruction, which was refused, and an exception was taken :

1. The jury are instructed that the defendant was not bound by law to build anything more than the usual and ordinary farm-crossing on this farm ; that the defendant was not bound by law to build a bridge over the railroad, above the tops of the cars, for the accommodation of the plaintiff's farm, as a farm-crossing, and that there was no negligence on the part of the defendant in not having built such a bridge over the railroad on this farm.

The following instructions were given for the defendant :

1. The jury are instructed that they are to consider whether there was any negligence on the part of the plaintiff himself, or a want of care and common prudence such as men of common sense and common prudence ordinarily exercise on such occasions ; and if they believe from the evidence, in

view of all the circumstances, that there was such negligence or want of care and common prudence on his part which produced, or contributed in part to produce, the accident and injury in this case, then the jury must find for the defendant, unless the jury believe from the evidence that there was a willingness on the part of the defendant to inflict the injury complained of.

2. Though the jury may believe there was some negligence on the part of the defendant, yet if they believe from the evidence that there was also negligence on the part of the plaintiff himself which produced or contributed to produce and occasion the accident and injury in this case, then they must find for the defendant, unless they are satisfied from the evidence that the defendant wilfully inflicted the injury complained of.

3. The jury are further instructed as to what is negligence in the plaintiff, that they are to consider and judge, from all the circumstances in the case, whether any man having charge of a team of horses who is about to cross a railroad at a crossing, on the same level with the track, where his view of the track and of a coming train is intercepted until he approaches very near to the crossing, is not in duty bound to stop and listen, and look in both directions, up and down the track, before he ventures to drive thereon; and if the jury believe from the evidence that the plaintiff failed to do so on this occasion, and that if he had done so he could have seen or heard the train coming in time to have avoided the accident, then they may find that there was negligence on his part; and if the jury find that there was any negligence, or want of care and common prudence, on his part, which produced or contributed to produce and occasion the accident and injury complained of, they will find for the defendant, unless the jury believe from the evidence that the defendant wilfully caused the injury complained of.

4. The jury are instructed that the provision of the statute of this State relating to signals by ringing the bell or sounding the steam whistle, therein required to be given by

railroad trains on approaching road-crossings on the same level with the track, are intended to apply to open public roads or streets, and that they do not apply to nor include a mere private farm-crossing; and if the jury believe from the evidence that this was a private farm-crossing, and not an open public road or highway, then these stated signals were not required by law to be given on approaching this crossing and for the farm-crossing; and if the jury further believe from the evidence that the alarm bell or signal whistle for putting down brakes was sounded, and the engine reversed, as soon as the engineer or conductor saw the team of horses about to enter upon the track, then there was no negligence on the part of these officers in respect to the giving, even if they did not give, in fact, the alarm by bell or whistle at a distance of eighty rods or more from the crossing in question, or before the team was actually seen.

5. The jury are instructed that the plaintiff is not entitled to recover any damages in this case on account of the death of his daughter, or any injury done to her; and the jury will confine themselves wholly and exclusively to the consideration of the evidence relating to the injury done to the plaintiff himself, either in respect to his own person or his property.

6. If the jury believe from all the evidence that the injury done in this case was the result of accident or misadventure, without any culpable negligence in either party, they will find for the defendant.

Verdict was rendered for the plaintiff for $2,000 damages.

*Orrick* and *Carr*, for appellant.

I. The instructions given for the plaintiff were erroneous.

*The first*—Because, 1. There was no such case stated in the petition, nor in issue, as that supposed by this instruction. The case stated in the petition was, that the defendant had failed to make for plaintiff's use a safe and good farm-crossing, and that, by reason of this failure, the plaintiff, in attempting to use the crossing that was made there, had suf-

fered the injury complained of. It was added, it is true, in the conclusion of the petition, that the same injury was caused and occasioned by the negligence, unskilfulness, criminal intent, carelessness and incompetency of the officers, agents and employees of the defendant whilst running and conducting and managing the locomotives, cars and trains of cars of the defendant; but there is no statement of any case or any facts in the petition showing such negligence, &c., of officers, &c., in running, &c.; or if there be, then it is bad, on motion in arrest, for uniting two causes of action in one count.

2. There was no basis in the evidence for such an instruction.

*The second*—Because, 1. It was a departure from the petition and issue, there being no allegation in the petition that the defendant had been in fault in the construction of the railroad, but only that they had failed to make a safe and good farm-crossing.

2. It makes the defendant responsible for the topography of the country, and the fact that the plaintiff's view of the track was intercepted by an intervening ridge until he drew near to the crossing; and this, besides being a departure from the petition, was erroneous as an abstract proposition of law.

*The third*—Because, 1. It was a departure from the petition, there being no allegation of fact therein showing a case of negligence, &c., of the officers, &c., in running locomotives, cars and trains.

2. It was erroneous in assuming that the defendant was bound by law to sound a signal for the farm-crossing, or to lessen the speed of the train on account of the locality of the crossing and the topography of the country adjacent. The statute provision concerning signals and road-crossing (Charter Acts of Mar. 3, 1851, § 11; Laws of 1851, p. 483), and Jan. 7, 1852 (Laws of 1853, p. 323), and Railroad Act, § 25 (R. C. 1855, p. 423, §§ 47, 48, 57, & pp. 436-8), all relate to public roads or streets. In Redf. Railw. 172, § 80 (2), a "farm road" is not a "road," nor even a "private way."

*The fourth*—Because, 1. It relates to another and wholly

different transaction not in issue, occurring (if it ever occurred at all), as it might be, "in the vicinity," miles away from the scene of the transaction stated in the petition. Shaw v. Bos. & Wor. R. Co. (8 Gray, 69–71), the inquiry must be confined to the very transaction stated in the petition.

2. It is argumentative on assumptions of remote facts and imaginary possibilities having no immediate connection with the transaction in question.

3. There was no basis in the evidence for such an instruction.

*The fifth*—Because, 1. It authorizes the jury to find the defendant guilty of negligence and unskilfulness, and liable in this action, if they believe this farm-crossing was hazardous and dangerous to persons crossing. Of course, all crossings are hazardous and dangerous to persons crossing, especially at an hour when a train coming on time is to pass.

*The sixth*—The court erred in giving this instruction, for it gave countenance to the idea with the jury that there was evidence before them on which they would be justified in law in finding that the injury done to plaintiff was wilful and reckless on the part of the defendant; which was not merely absurd, but tended to mislead the jury. (Sedg. Dam. p. 653; 16 Conn. 320; 6 Cow. 254; 7 Mass. 254; 5 Watts & Serg. 524; 1 Barr. 190–97; Sedg. Dam. p. 664.)

The appellant was a common carrier of passengers and property on the train, and as such was under a paramount obligation to transport the passengers and property with speed and safety; and, subject to this paramount obligation, it was under a secondary obligation to citizens along the line of its road to run its train so as not to injure them in person and property. This view of the case is entirely ignored by the instructions given by the court on motion of the respondent. (Louisv. & Frankf. R.R. Co. v. Ballard, 2 Met., Ky. 177.)

II. The instructions which were refused for defendant should have been given.

The Charter Acts of Mar. 3, 1851 (Laws of 1851, p. 483), and Jan. 7, 1853 (Laws of 1853, p. 323), did not require

the company to build farm-crossings. The Railroad Act of Feb. 24, 1853, § 51, required railroad corporations formed under that act to erect and maintain farm-crossings for the use of owners of farms, and by § 56 all railroad corporations in the State were made "subject to all duties, liabilities and provisions (of said act) not inconsistent with the provisions of their charters"; and the same was re-enacted December 13, 1855. (R. C. 1855, pp. 437–8, §§ 52–7.)

The defendant was not bound by these statutes, nor by any law, to build an expensive bridge over a cut for the accommodation of this farm, when an ordinary farm-crossing could be built at other places on the farm which could be used with safety and convenience by the exercise of care and common prudence. (Horne v. Atlantic R.R., 36 N. H. 440–8.)

III. The case being put before the jury in this manner for the plaintiff, the instructions which were given for the defendant were of no use to him.

IV. The verdict was against the instructions given for the defendant; for, on the whole evidence, it was a clear case of negligence on the part of the plaintiff himself, and that, too, negligence which not only contributed to produce the accident, but was the whole real cause and occasion of the accident.

Redf. Railw. 394, § 172, n. 4 & 5, plaintiff was bound to stop and listen, and to get out and look up and down the track. (O'Brien v. Phil. & Wilm. R.R. Co., cited from 10 Am. Railw. Times, Nos. 10–13, not reported; Shaw v. Boston & Worc. R.R. Co., 8 Gray, 66–8; Redf. Railw. 330, § 150 [1]; id. 394, ℱ 172 [3]; Railroad v. Norton, 24 Penn. 465.) Where there is negligence on the part of the plaintiff himself, he cannot recover. (Penn. R.R. Co. v. Ogier, 35 Penn. 60; Felden v. Railw. Co., 2 McMull., S. C., 403; Herring v. Wilm. R. Co., 10 Ired. 402.) If negligence of plaintiff contributed to the accident, he cannot recover. (Penn. R. Co. v. Henderson, 43 Penn. 453; Penn. R. Co. v. Zebe, 33 Penn. 325; Chicago & Rock Island R.R. Co. v. Stilt, 19 Ills. 499.)

*E. A. Lewis* and *W. A. Alexander*, for respondent.

I. As to the sixth instruction given for plaintiff, the evidence tended to show not only that the person running the train approached a hidden and exceeding dangerous crossing at a high rate of speed without sounding any signal, but that he also violated the law requiring him to sound a signal at a public road-crossing close by and just before reaching the scene of the catastrophe ; it was, therefore, properly left to the jury to determine whether these omissions, aggravated as they were by the location of the crossing and the adjacent topography, did not manifest a carelessness of life and property amounting to recklessness. (West v. Forrest, 22 Mo. 344; James v. Christy, 18 Mo. 164; Fairchild v. Cal. Stage Co., 13 Cal. 599; Kountz v. Brown, 16 B. Mon. 577; Hopkins v. Alt. & St. L. R.R. Co., 36 Ills. 9; Masters v. Warren, 27 Conn. 293; N. O., &c., R.R. Co. v. Hurst, 36 Miss. 660; Macon, &c., R.R. Co. v. Winn, 26 Geo. 250.)

WAGNER, Judge, delivered the opinion of the court.

From the record in this case, it appears that the collision took place where the railroad crosses a private farm-crossing, on land belonging to respondent.  From the peculiar topography of the country, and the location of appellant's track, it seems that the cars could not be observed by a person travelling in the direction in which the respondent was going, till they were immediately up to the crossing.  The parties were each travelling their respective roads ; each had a right to exercise this privilege, in a lawful manner, without hindrance or disturbance; and each was equally bound to use the same degree of caution, care and diligence to avoid collisions or accidents.  If either party, by his negligence, contributed to the catastrophe, he must suffer the consequences, unless the other party was guilty of misconduct still more gross and culpable, and could have prevented it by the exercise of reasonable precaution.

Negligence is the want of that care which men of common sense and common prudence ordinarily exercise in like em-

ployments. Railroad companies, owing to the dangerous character of the machinery and vehicles they operate, will be held to the use of the greatest caution and skill in the management of their business : but this extraordinary degree of care and skill required on their part will not exonerate others who have been wanting in prudence, or guilty of negligence. The question of negligence is one of fact, to be submitted to the jury under all the circumstances, and to be determined by them upon their view of what prudence and skill required. (Redf. Railw. 393 ; Macon & W. R.R. Co. v. Davis, 18 Geo. 679.)

In this case much evidence was introduced, and it was very contradictory in its character. Some of the instructions given for the respondent were objectionable; but we are of the opinion that their objectionable features were counteracted by those given for the appellant, and that all, taken together, presented the law fairly, with the exception which we shall presently notice.

The ground urged for a reversal, that the damages are too large, is not good here. There was evidence to go the jury, and where that is the case it is their peculiar province, under proper instructions from the court, to determine the amount. Before we are at liberty to interfere with a verdict, it must appear at first blush that the damages are flagrantly excessive, or that the jury have been influenced by passion, prejudice, or partiality. When there is any evidence to support the verdict, it will not be disturbed ; but this court will interfere when there is no evidence, or when the court below gives an instruction which is not authorized by the evidence.

The court, in the sixth instruction given at the instance of the respondent, instructed the jury, that if they believed, from the evidence in the case, that the injury complained of was wilfully or recklessly done by the defendant, then they were not confined to the actual damages sustained by the plaintiff, but might give such exemplary damages as the circumstances of the case warranted.

To authorize the giving of exemplary or vindictive damages,

State to use, &c., v. Grupe et al.

either malice, violence, oppression, or wanton recklessness, must mingle in the controversy and form one of the chief ingredients. The act complained of must partake something of a criminal or wanton nature, else the amount sought to be recovered will be confined to compensation; but compensation will be intended to amount to full satisfaction, and the jury must measure this as well as they can, taking into consideration the whole injury which was sustained, in all its parts—as suffering, bodily and mentally; loss of time, or of money, or of labor; and it will also include prospective losses and expenses.

And in case of collision, like the present, if it was brought about by the wantonness, recklessness, or gross negligence, of those in charge of the train, it is permissible to give exemplary damages; but for a mere casualty or collision, without wantonness, recklessness, or gross negligence, exemplary damages should not be awarded. (Hawkins & Co. v. Riley, 17 B. Mon. 101.) In this case there is no evidence whatever of either recklessness, wantonness, or gross negligence, on the part of those conducting the railroad train, and consequently nothing on which to predicate the instruction. The instruction asserts a correct abstract proposition of law, but there is no evidence to support it.

Courts should not state propositions of law hypothetically when there is no evidence in the case applicable to them. They are calculated to mislead the jury.

For the giving of this last instruction the judgment is reversed and the cause remanded. Judge Lovelace concurs; Judge Holmes, having been of counsel, did not sit.