[S. F. No. 2775.   Department One.—July 8, 1903.]

JOHN MAHER, Respondent, v. HENRY WILSON et al.,
Appellants.

FALSE IMPRISONMENT—WRONGFUL ARREST—BRIEF DETENTION—NOMI-
NAL DAMAGES.—In an action for false imprisonment under a
wrongful arrest, where the detention was brief, and no actual dam-
age is shown, and the evidence does not show any oppression, fraud,
or malice on the part of the defendant, actual or presumed, the
plaintiff is entitled to nominal damages only.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order denying
a new trial. John Hunt, Judge.

The facts are stated in the opinion.

John Flournoy, for Appellants.

Joseph Leggett, and James G. Maguire, for Respondent.

HAYNES, C.—Action for false imprisonment.  Plaintiff
had judgment, and defendants appeal therefrom and from an
order denying a new trial.

Defendants are members of the firm of Wilson Brothers
& Co., engaged in dealing in lumber in the city of San Fran-
cisco, and in January, 1900, procured a cargo of lumber
to be shipped to them from a northern port by the Hale &
Kern Contracting Company, of Portland, Oregon, on their
barge, at a specified rate per thousand feet.  The lumber was
measured at the shipping port, but there was some dissatisfac-
tion with the measurement, and it was agreed between Wilson
Brothers & Co. and said contracting company that the cargo
should be remeasured at San Francisco when it should be
taken from the barge, the expense of resurveying the lumber
to be borne equally by the parties.  Said owners of the barge
employed one D. J. Miller, as stevedore, to discharge the
lumber from the barge at San Francisco, and on January
28, 1900, wrote him as follows: "Mr. Wilson is not satisfied
with the mill tally there, and told Mr. Kern that he would
pay half to have it tallied in San Francisco; we have written

to Wilson Brothers & Co., and agree to pay the other half of the tally. There is only 937,000 feet according to their tally.'' Miller, without consulting Wilson Brothers & Co., employed the plaintiff to tally the lumber, and the work of discharging commenced on February 8, 1900. Defendant Johnson, upon being informed that plaintiff was to tally the lumber, notified both him and Miller that his tally would not be received, and this notice was given before the work of discharging the lumber was commenced. On January 28, 1900, (the date of their letter to Miller,) Hale & Kern Contracting Company wrote Wilson Brothers & Co., as follows: ''Our Mr. Kern returned from Aberdeen and reports that Mr. Wilson there, and he also, are not satisfied with the tally of lumber made at Wilson's wharf and loaded on the Washtucna. Mr. Wilson said he would pay half the cost of tallying the lumber at San Francisco; we are willing to pay the other half, and wish you would have it tallied.'' Plaintiff testified that he was employed on February 8, 1900, by the Hale & Kern Contracting Company, through Miller, the stevedore, to survey said cargo, and commenced work about eight o'clock in the morning, and continued until five in the evening, excepting an hour and a quarter that he was absent; that defendant Wilson came on the barge about half-past ten o'clock, and demanded to know by what right he (the plaintiff) was there; that he told him that Miller had employed him; that Wilson then said, ''You are discharged''; that he told Wilson he had no right to discharge him, that he was not in his employ; that Wilson after consulting Miller told plaintiff that he should leave the barge, that he would not accept any stock from the barge while he (the plaintiff) was there; that he refused to leave the barge, but admitted that defendants were the consignees of the cargo; that he (plaintiff) had another conversation with Wilson about eleven o'clock, when he came with defendant Johnson; that Miller then spoke to him, saying that Wilson had commanded him to leave the barge, and if he did not leave he (Wilson) would get an officer and have him arrested; that he stepped off the barge onto the wharf and told Wilson that he might get an officer and have him arrested. Plaintiff further testified, that he went to work again at one o'clock, and that Wilson asked, ''Why do you persist in stay-

ing here and tallying my lumber when I do not wish you to do it? I notify you not to touch or survey that lumber, and if you do I will get an officer and have you arrested''; that he did not answer him, but proceeded with his work; that he started to measure a piece of lumber, and Wilson struck him in the face and knocked him down, and when he recovered he knocked Wilson down, and one of Wilson's drivers attacked him and struck him on his face and cut it, and when the struggle was ended he went to work again; that about a half-hour afterwards police-officers McGraham and Driscoll came and demanded to know what he was doing; that after talking with him they went and consulted Wilson, and then came and put him under arrest and took him to defendants' office; that he demanded that Wilson be taken to the City Hall; that he did not know whether it was Wilson or Johnson that made the remark that they did not care about prosecuting him, but he overheard something like that said to the officers at defendants' office; that the officer took plaintiff to the City Hall on a street-car; that Johnson drove up, but Wilson did not go; that no charge was made there.

It appeared from other evidence that Johnson had not witnessed the breach of the peace, and was told he could not make a complaint; that he said he did not want to, that he only desired to have him removed from the wharf. Plaintiff also testified that he was to have six dollars per day, and it would require about eight days to discharge the lumber and make out the manifest; that he was paid by Miller for one day's work, and twelve dollars for loss of employment; that he was absent from the wharf about an hour and a quarter, about fifteen or twenty minutes of which was spent at the City Hall.

Officer McGraham, called by the plaintiff, testified that he was then acting as bailiff in Judge Conlan's court; that Johnson made a statement to the judge, and from that statement he took him to Captain Spillane, and the captain sent him to the wharf to see what the trouble was; that Johnson pointed out plaintiff as the cause of all the trouble, and said he wanted him arrested, and that he served the subpœnas upon the witnesses Johnson pointed out. It is not necessary to go over in detail the evidence given on the part of the defendants. It

shows somewhat·more fully the details of the day's trials and exasperations. It was testified, however, that up to the evening of the day before defendants had been unable to procure the services of a member of the lumbermen's association, but then found one who promised to come at noon of the 8th and had obtained a competent man to tally until his arrival. It was further shown that defendants had hired one hundred and fifty feet of the wharf for the discharge of the lumber.

The jury returned a verdict for the plaintiff, assessing his damages at one thousand dollars. On the hearing of defendants' motion for a new trial the court made a conditional order, to the effect that if plaintiff would remit one half of said sum the motion would be denied; that otherwise it would be granted. Plaintiff remitted one half of the amount, and defendants' motion for a new trial was thereupon denied. It should have been granted.

No actual damages were shown. Plaintiff was never employed by the defendants or their firm to survey that cargo of lumber. That Miller, the stevedore, had no authority to employ him on behalf of the defendants or of their firm is clear. Miller was simply informed that the lumber was to be tallied, the expense to be borne equally by that company and the consignee. He had no power to employ a surveyor to represent the defendants; but if he had the power to employ a surveyor for either or both of the principals, it follows that he had the power to discharge the plaintiff, and both the defendants and Miller did discharge him; and if it be further conceded that plaintiff was in fact employed by both firms, it was his duty at once to obey·the discharge, and if injured thereby he had an adequate remedy upon the contract for any damage resulting from its breach. He testified explicitly, however, that he was not employed by defendants, or their firm. His contention that when a member of the lumbermen's association is put upon a vessel he cannot be removed, is based upon a false conception of the purposes and powers of the association. His acts, after his discharge at least, constituted an unwarranted and wholly unjustifiable interference with the property and rights of the defendants, and made him a trespasser and wrongful

intruder upon that part of the wharf hired, used, and occupied by defendants for the purpose of unloading their lumber from the barge. He was rightfully removed from the premises at the request of defendants, especially as the removal was accomplished without physical force or violence. (*McCarty* v. *Fremont*, 23 Cal. 197; Cooley on Torts, 2d ed., 193.) The detention of plaintiff, after his removal from the wharf, was a technical false imprisonment, and the remaining question relates to the damages to which the plaintiff is entitled. Damages are usually classified as actual, exemplary, or nominal. Section 3333 of the Civil Code provides: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

Section 3294 of the same code provides: "In any action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant." Said sections both relate to the breach of obligations "not arising from contract," and the only difference between them, as to the liability for a breach, is based upon the presence or absence of "oppression, fraud, or malice." In the absence of oppression, fraud, or malice, actual or presumed, only actual or compensatory damages can be given. There is no evidence that plaintiff sustained any actual damage. He did not incur any expense in consequence of his arrest, and lost no time. He was absent from the wharf an hour and a quarter, but he had no employment there or elsewhere, and could not lose time or wages by his absence. He testified that he was paid by Miller six dollars for the day's time, and twelve dollars for loss of employment. Whether Miller was personally liable to him for making an unauthorized contract, or for its breach, is immaterial. It is clear that defendants were not, and could not be, responsible for loss of any time or for the breach of a contract of employment they never made, approved, or ratified. Having no contract with defendants, and having been discharged by

Miller, he was out of employment, and lost nothing in consequence of his absence. There is in the record no evidence of malice in the conduct of defendants. They had borne, for the greater part of the day, his unjustifiable persistence in trespassing upon the wharf under their control, and meddling with their property in the face of their protest. He was rightfully removed from the wharf, and that seemed to be all the defendants desired. Wilson refused to go to the city hall and make a complaint. Johnson testified that he asked the police officer to remove plaintiff from the wharf; that they took him in front of defendants' office, and asked if witness would come and make a complaint against him; that he told them all he wanted was to get him off the wharf, but that he finally consented to make a complaint. At the City Hall he was asked if he saw the breach of the peace, and answered that he did not, and the captain then told him he could not make a complaint, to which Johnson replied he did not want to; that he only wanted him removed from the wharf.

There is no evidence of malice or oppression. Defendants might have removed him from the portion of the wharf used by them without the aid of an officer, using only so much force as might have been necessary for that purpose. (*McCarty* v. *Fremont*, 23 Cal. 197; Cooley on Torts, 2d ed., p. 193.) In *Berry* v. *Fletcher*, 1 Dill. 72, Judge Dillon charged the jury: "To authorize the giving of exemplary or vindictive damages, either malice, violence, oppression, or wanton recklessness must mingle in the controversy. The act complained of must partake of a criminal or wanton nature, or else the amount sought to be recovered should be confined to compensation." (See, also, *Kennedy* v. *North Missouri R. R. Co.*, 36 Mo. 351.) The supreme court of the United States, in an action for false imprisonment, said: "It is the settled doctrine that damages are graduated by the intent of the party committing the wrong. It is equally well settled that in the absence of gross fraud, malice, or oppression, in cases of trespass to person or estate, the jury should restrict damages to compensation or satisfaction for the actual injury sustained. . . . The principle of permitting damages in certain cases to go beyond naked compensation is for example, and the

punishment of the guilty party for the wicked, corrupt, and malignant motive and design which prompted him to the wrongful act." (*Beckwith* v. *Bean*, 98 U. S. 266, 275.) In the case at bar there was no evidence of malice, oppression, or design to injure the plaintiff. He declared that he had not been employed by defendants. He admitted that the lumber was theirs. The defendants from the early morning until the middle of the afternoon protested against his interference with their property, and by request, by formal discharge by Miller as well as by themselves, and by repeated protests and commands, had endeavored to cause plaintiff's obstinate and unauthorized interference with their business and property to cease. He incurred no loss of time or wages by the arrest. He alleged in his complaint that he "suffered great pain and mental anguish, mortification, shame, and disgrace." There was no evidence specially addressed to these allegations. Plaintiff's persistent intermeddling with the defendants' property, notwithstanding their repeated protests, does not very strongly tend to show a nature so sensitive as to be overcome with shame and mental anguish by being taken in custody by a police officer under the circumstances shown by the record.

Section 3360 of the Civil Code provides that "When a breach of duty has caused no appreciable detriment to the party affected, he may yet recover nominal damages."

In the case before us no actual damages are shown to have been sustained, nor were the defendants guilty of malice or oppression, and therefore they are not liable for exemplary or punitive damages. They have, however, incurred a technical liability, entitling the plaintiff to nominal damages. Such damages are defined by Bouvier (Law Dictionary, "Nominal Damages") as "A trifling sum awarded where a breach of duty or an infraction of the plaintiff's right is shown, but no serious loss is proved to have been sustained;" or, "where from the nature of the case, some injury has been done, the amount of which the proofs fail entirely to show." A trifling sum is there said to be "as a penny, one cent, six and a quarter cents."

In no case for the breach of an obligation, not arising from contract, can there be more than compensatory damages

allowed, unless the defendant "has been guilty of oppression, fraud, or malice, actual or presumed." (Civ. Code, sec. 3294, 3333.)

The judgment and order appealed from should be reversed.

Gray, C., and Chipman, C., concurred.

For the reasons given in the foregoing opinion the judgment and order appealed from are reversed.

Shaw, J., Van Dyke, J.

Angellotti, J., concurred in the judgment.

Hearing in Bank denied.