[Civ. No. 1562. First Appellate District.—November 20, 1915.]

## HENRY LUND et al., Copartners, etc., Appellants, v. ARTHUR LACHMAN, Respondent.

SALES—ACTION BY SELLER—BREACH OF CONTRACT TO PURCHASE BOTTLES —MEASURE OF DAMAGES—SECTION 3353, CIVIL CODE.—In an action by a seller for breach of a contract to purchase a certain specified quantity of quart bottles, the measure of damages is that fixed by section 3353 of the Civil Code, which provides that in estimating damages the value of property to a seller thereof is deemed to be the price which he could have obtained therefor in the market nearest the place at which it should have been accepted by the buyer, and at such time after the breach of the contract as would have sufficed with reasonable diligence for the seller to effect a resale.

ID.—EVIDENCE—LACK OF DILIGENCE IN MAKING SALES—NOMINAL DAM-AGES.—Where, in such an action, it is shown that the seller, upon the refusal of the buyer to accept the goods, removed the same to a warehouse, where they were stored and insured, and from time to time sold at private sale at varying prices for an aggregate sum less than the sum total of the contract price, instead of being taken to the nearest market, where they could have been sold at an advance of the contract price, the seller is entitled at most to but nominal damages.

ID.—DUTY OF SELLER—PROCURING OF HIGHEST MARKET PRICE—CON-STRUCTION OF SECTION 3353, CIVIL CODE.—Under the provisions of section 3353 of the Civil Code, it is the duty of the seller, regardless of his business capacity or ability along the particular line of goods forming the subject matter of the broken contract, to go into the open market and obtain for the rejected goods the highest obtainable market price therefor.

ID.—MARKET VALUE—MEANING OF.—The market value of a commodity is the highest price in the market where it is offered for sale which those having the means and inclination to buy are willing to pay for it.

ID.—EVIDENCE—PREVAILING MARKET PRICE.—In such an action it is not error to permit evidence of the prevailing market price during the period following the tender and rejection of the bottles.

ID.—FAILURE TO ALLOW NOMINAL DAMAGES—INSUFFICIENT GROUND FOR REVERSAL.—In such an action, the refusal to allow the plaintiff at least nominal damages will not warrant the reversal of the judgment or the granting of a new trial, as such a judgment would not carry costs.

ID.—NOMINAL DAMAGES—COSTS.—Nominal damages have been defined to mean merely an inconsiderable, trifling sum, such as a penny, one cent, six cents, and to carry costs a judgment of the superior court must amount to the sum of three hundred dollars.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial. B. V. Sargent, Judge presiding.

The facts are stated in the opinion of the court.

H. W. Glensor, for Appellants.

Jesse H. Steinhart, for Respondent.

LENNON, P. J.—This is an action for damages for the alleged breach of a contract to purchase personal property. The appeal is from the judgment in favor of the defendant and from the order denying a new trial.

The facts of the case as revealed by the pleadings and proof are substantially these: On November 30 and December 1, 1910, the defendant entered into two contracts with the plaintiffs for the purchase of certain specified quantities of claret quart bottles, to be shipped from Sweden during the months of February or March, 1911. The contract price was $5.85 per gross, and delivery was to be made from the ship's side at San Francisco. The bottles arrived at San Francisco on the steamship "Strathbeg" on June 15, 1911. They were tendered to the defendant on June 16, 1911, and refused by him. The bottles were thereupon removed to a warehouse by the plaintiffs, where they were stored and insured, and from time to time sold at private sale at varying prices for the aggregate sum of $2,912.85, which was $12.15 less than the sum total of the purchase price specified in both contracts.

The trial court in its findings of fact found that the plaintiffs did not use due or any diligence in making sales of the bottles; that the several sums obtained therefor at the several sales were not separately or *in toto* the highest obtainable market price; and that plaintiffs were not compelled to have such bottles removed to a warehouse because of the defendant's breach of the contracts.

The bottles having been sold at private sale, and it being an admitted fact in the case that title to the bottles had not passed from the plaintiffs, it is conceded, as it must be, that plaintiffs' only remedy was damages for the breach of the contracts (*Cuthill* v. *Peabody*, 19 Cal. App. 304, [125 Pac. 926]); and that the measure of the damages alleged to have been thereby

sustained is to be found in section 3353 of the Civil Code, which provides that "In estimating damages, the value of property to a seller thereof is deemed to be the price which he could have obtained therefor in the market nearest to the place at which it should have been accepted by the buyer, and at such time after the breach of the contract as would have sufficed, with reasonable diligence, for the seller to effect a resale."

In addition to claiming that the findings are contrary to the evidence concerning the market value of the bottles and the necessity for their removal to a warehouse as a result of the defendant's breach of the contracts, it is insisted that the plaintiffs should have been allowed five per cent commission as compensation for the cost of making the several resales of the bottles.

The evidence adduced on behalf of the plaintiffs shows that the bottles were sold at a series of sales made during a period of time extending from July 6, 1911, to March 20, 1912, at approximately $5.75 per gross, and there was some evidence, competent and uncontradicted, adduced upon behalf of the defendant, to the effect that during the month of June, 1911, there was in the city and county of San Francisco, the place where the bottles should have been accepted by the defendant, a well-established and active market price for bottles similar to those contracted for by the defendant, which ranged from $6.25 to $7.25 per gross. The evidence also shows that the business of the plaintiffs was that of steamship freighters, importers, and exporters, and that the sale of the bottles in question was intrusted to a salesman of the plaintiffs, whose specialty was that of selling iron, coke, and pig iron; and Carl Bundschu, manager of the Gundlach-Bundschu Wine Company, as a witness for the defendant, testified that "About the month of July, 1911, there was sold to us by Henry Lund & Co. a gross of claret bottles at $5.85 a bale. That was below the market price, cheaper than I could buy elsewhere." The salesman of the plaintiffs, in explanation and justification of the price procured for 387 bales of the bottles in question, which he had sold in or about the month of March, 1912, to one Rosenberg, testified that at that time he was unaware of the fact that there was a scarcity of bottles in the local market resulting from a scarcity of bottles in Germany and Sweden,

and that it was this fact known to Rosenberg at the time of the sale which prompted the latter to make the purchase.

Counsel for the plaintiffs in effect concede that such evidence was sufficient to warrant and support the finding of the trial court that the plaintiffs had failed and neglected to. procure the highest obtainable market price for the bottles, if section 3353 of the Civil Code is to be construed ''as requiring the seller, regardless of his business capacity or ability along the particular line of goods forming the subject matter of the broken contracts, to go into the open market and obtain for the rejected goods a price as high or higher than any other firm or individual is getting. . . . '' In other words, it is the contention of the counsel for the plaintiffs that it was the intent and purpose of section 3353 of the Civil Code to provide that the value of the property to the seller is the price which he personally could obtain for it, regardless of what the market price thereof may have been. That this contention is utterly without merit is, we think, manifest upon a casual consideration of the language employed in the code section under discussion; but even if that were not so, the section has in effect been held to mean that the seller of rejected property who seeks to recoup his loss, if any, by a private sale, must resort to such resale in the open market and at market values. (*Hill* v. *McKay,* 94 Cal. 5, [29 Pac. 406] ;*Willson* v. *Gregory,* 2 Cal. App. 312, [84 Pac. 356]; *Welch* v. *Nichols,* 41 Mont. 435, [110 Pac. 89].) Obviously, the market value of a commodity is the highest price in the market where it is offered for sale which those having the means and inclination to buy are willing to pay for it; and it is equally obvious, we think, that market values are created and controlled by the condition of the market with reference to supply and demand rather than by the particular or peculiar selling ability of the seller.

This view of the law compels the conclusion that the evidence sustains the finding of the trial court concerning the failure of the plaintiffs to procure the highest market price obtainable for the bottles in question; and inasmuch as there is some evidence tending to show that at the very time the contract was breached, and subsequently, there was at San Francisco an active market for bottles of the character and quantity called for in- the contracts in controversy, with a market price therefor ranging from $6.25 to $7.50 per gross,

which was far in excess of the contract price, it cannot be said that the evidence does not support the finding of the trial court to the effect that the plaintiffs were not compelled to store the bottles because of the defendant's failure to accept them. While it was not incumbent upon the plaintiffs to make the resale immediately after the repudiation of the contract by the defendant, nevertheless the plaintiffs were required to exercise reasonable diligence in locating the nearest market, and ascertaining the prevailing market price for the rejected bottles; and there can be no doubt that there was sufficient evidence to justify the trial court in finding that if the plaintiffs had seen fit to seek and take the market price for the bottles which prevailed on the day and for many days following their arrival and tender and rejection at San Francisco, they could have sold them at a substantial advance over the contract price which would have more than covered the expense of drayage, storage, and insurance for a reasonable time had such expense been found to be necessary, and therefore in no event would the plaintiffs have been entitled to recover such expense from the defendant.

What we have said thus far in effect disposes of the point that the plaintiffs were entitled to interest upon the amount of damage accruing from the defendant's breach of the contracts, and to compensation for making the resale, in the form of a commission upon the price obtained. Assuming that the plaintiffs ordinarily would have been entitled to recover such items as a part of their damage, nevertheless it is obvious that if the plaintiffs failed—as the court upon sufficient evidence found—to take advantage of prevailing market prices which would have more than made them whole, they cannot now predicate a claim for damage upon such items any more than upon the other elements of damage already considered.

The view which we have taken of the meaning and intent of section 3353 of the Civil Code compels the conclusion that the trial court did not err in its rulings permitting evidence of the prevailing market value during the period following the tender and rejection of the bottles.

The judgment and order are affirmed.

Kerrigan, J., and Richards, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on December 20, 1915, and the following opinion then rendered thereon:

THE COURT.—On petition for rehearing the only point urged is that the original opinion failed to take cognizance of the point presented and discussed in the briefs of counsel for the plaintiffs, that the judgment should be reversed because the trial court refused to allow the plaintiffs at least nominal damages. While this point did not escape the attention of this court upon the original consideration of this case, a discussion of it was inadvertently omitted from the opinion. It will suffice to say at this time that it is the settled rule that where a judgment is erroneous only in the particular that it did not include nominal damages, it will not be reversed nor a new trial granted unless it be made to appear that such damages, if they had been allowed, would have carried costs. (Sutherland on Damages, sec. 11; *Kenyon* v. *Western Union etc. Co.,* 100 Cal. 454, [35 Pac. 75].) Nominal damages have been defined to mean merely an inconsiderable, trifling sum; such as "a penny, one cent, six cents" (*Davidson* v. *Devine,* 70 Cal. 519, [11 Pac. 664]; *Maher* v. *Wilson,* 139 Cal. 514, [73 Pac. 418]); and to carry costs, a judgment of the superior court must amount to the sum of three hundred dollars. (Code Civ. Proc., secs. 1022, 1025.) Such a judgment obviously could not be considered to be one for nominal damages as above defined (*Broads* v. *Mead,* 159 Cal. 765, [Ann. Cas. 1912C, 1125, 116 Pac. 46]); and as the judgment in the present case would have to amount to three hundred dollars before it could carry costs, it follows that a judgment for nominal damages would not carry costs. We are satisfied that in no event could the plaintiffs, under the pleaded and proven facts of the present case, have been allowed more than nominal damages; consequently the error, if any, in the particular stated will not suffice under the authorities above cited to warrant the reversal of the judgment or the granting of a new trial.

The petition for a rehearing is denied.