[Civ. No. 11264. Second Appellate District, Division One.—July 20, 1937.]

WILLIAM F. R. PRICE, Appellant, v. JOHN P. Mc-COMISH, Respondent.

 

Halverson & Halverson for Appellant.

A. G. Vandeventer and J. Lang Felton for Respondent.

HOUSER, P. J.—The only point that is presented by appellant, who was the plaintiff in the court below, is that in view of the evidence that was adduced on the trial of the action and the findings of fact that were made thereon by the trial court, the judgment that was rendered in his favor for the sum of $200 lacked legal support.

In effect, the complaint contained the allegation that by reason of a wanton physical attack that was made by defendant on plaintiff, the latter had suffered damages in the aggregate sum of $10,783. And by the findings of fact the trial court declared:

"That all the allegations of the complaint are true, except that the court finds that the plaintiff was damaged in the sum of $200."

More specifically, as hereinbefore has been indicated, the question is whether a judgment in the sum of $200 may be said to be legally supported by the evidence. In that regard, the bill of exceptions discloses the fact that on the trial of the action, evidence was adduced to the effect that without any provocation on the part of plaintiff, defendant assaulted plaintiff and knocked him down; that thereupon he was first taken to his home and later removed to a hospital, where he was regularly attended by a physician for a period of two weeks, at the expiration of which time he was returned to his home. While at the hospital X-rays were taken, which revealed the fact that the "ball of the right hip joint was

fractured at the socket''; that plaintiff was then placed in a plaster cast, which he wore for three months. Furthermore (quoting from the bill of exceptions), after his return to his home, plaintiff ''was then placed in bed on his back, and a contrivance with ropes and pulleys constructed over the bed so that he could be moved in bed; that after he had been home about two and a half months, the plaster cast was removed, and other X-rays were taken, and he was placed in a steel brace and that said brace remained on him for about two months; that he was unable to get out of bed for about four months, when he was able to get up and move about on crutches; that he had to use crutches for several months before he could walk with a cane, and that he then had to use a cane to aid him in walking; that during his confinement he suffered excruciating pain, and was unable to sleep normally; that for a long period of time during such confinement, he had to have the constant attendance of a nurse, and was personally unable to carry on any business, and under the medical care of Dr. Jay B. Cosgrove; that his hospital bill cost him $103.72, which he paid; that he paid $5.00 for an ambulance to take him to the hospital, and $5.00 for bringing him from the hospital to his home; that he paid $67.50 for five different X-rays of his right hip; that while at the hospital, Dr. Cosgrove called in Dr. John S. Stephens for consultation, and incurred therefor the sum of $75.00; that he had incurred for medical treatment for the services of Dr. Jay B. Cosgrove the sum of $300.00; that he paid for said steel brace the sum of $45.00; and $120.00 for a nurse for eight weeks; that he is still unable to do any manual labor; that prior to the accident he was able-bodied, and worked with his men on his jobs.''

The bill of exceptions also shows that:

''No evidence was offered on the question of injuries or damages to the plaintiff on the part of the defendant and the foregoing evidence (which, in addition to that which hereinbefore has been set forth, included corroboratory evidence that was given by the physician in charge) was all the evidence offered or considered on the question of damages in said cause.''

Furthermore, the bill of exceptions discloses the fact that although no amendments to the proposed bill of exceptions were proposed by defendant within the time allowed by law,

nevertheless, when the time came for the settlement of said bill, over the objection of plaintiff, the court inserted therein the following:

"Mr. George Halverson, attorney of record for plaintiff, himself, suggested to the court that but a slight or nominal judgment be rendered to plaintiff against the defendant, by addressing the court in substantially the following language in his argument on the trial of the matter: 'This defendant could have settled this matter for almost nothing. If he had only agreed to pay anything at all, we would not have been here in court. We are not expecting this court to give us a very big judgment, but we want something at least by way of a moral victory. The amount of the judgment rendered in this case is not as important to us as is the fact that we feel that the defendant should in some way be made to realize his position in this case. He should be compelled to pay at least part of the actual costs incurred by the plaintiff, as a result of the accident, in treating the injuries of plaintiff. All we want and all we expect from this court is a nominal amount by way of a judgment against this defendant.' "

In the absence of any testimony or evidence of any sort which might be considered as being contradictory of that to which reference hereinbefore has been had, it becomes apparent that the sum of $200 would represent nothing more than a small fraction of the damages which were sustained by plaintiff. The actual expenses for hospitalization, doctor's and nurse's services, and necessary incidentals, for which plaintiff expended money, amounted to more than three times the amount of the judgment, to say nothing of compensation that should have been awarded by reason of other damages that were occasioned to plaintiff as hereinbefore have been suggested.

If the legality of the amendment that was so belatedly made to the proposed bill may be assumed, the import of such amendment furnishes no sound foundation for the judgment which necessarily rested upon an utter disregard of the evidence by which the damages that were sustained by plaintiff were established. It is well-settled law that where it clearly appears from the evidence that a judgment is wholly inadequate in amount, a refusal by the trial court to grant a new trial for that reason furnishes ample ground for a reversal of the judgment. (*Torr* v. *United Railroads,* 187

Cal. 505 [202 Pac. 671]; *Seale* v. *Emerson*, 25 Cal. 293; *Donnatin* v. *Union Hardware & M. Co.*, 38 Cal. App. 8 [175 Pac. 26, 177 Pac. 845]; *Phillips* v. *Lyon*, 109 Cal. App. 264 [292 Pac. 711]. See, also, 20 Cal. Jur. 105 and 115.) In *Torr* v. *United Railroads, supra*, it was said:

"In the face of this testimony (as to the extent of plaintiff's injuries and loss of earnings) the allowance by the court for all her injuries was barely sufficient to pay her for the time lost in going to and from her physician's office, and not enough in all to compensate her for the time lost while she was sick in bed. It is clear that the compensation awarded the plaintiff was grossly inadequate. . . .

"Where it is manifest that under the express findings of the court, and the creditable and uncontradicted evidence in explanation thereof, that the allowance of damages is grossly inadequate to compensate for the injury due to decreased earning capacity, we will reverse the judgment, just as we would if the trial judge had rendered a judgment for nine hundred dollars on a promissory note of one thousand dollars."

In *Donnatin* v. *Union Hardware & M. Co., supra*, it was said: "Assuming as found by the jury, that defendant was legally liable therefor, the award of one dollar made to plaintiff as damage for the injury sustained is, upon the evidence presented, grossly inadequate, and there is no room for controversy as to the fact that inadequacy of damage in a suit of this character (personal injuries) may constitute ground for the granting of a new trial of the case on its merits."

In *Phillips* v. *Lyon*, 109 Cal. App. 264, 268 [292 Pac. 711, 712], it was held that "while a court may not set aside a verdict and grant a new trial merely because the judge does not agree with the amount of the award of damages, where it is so grossly inadequate or excessive as to leave no reasonable doubt that the verdict is the result of passion or prejudice or that it is contrary to the evidence and constitutes a clear abuse of the discretion of the jury, a new trial should be granted for the reason that the award of damages is not justified by the evidence and does not reasonably compensate for the injuries sustained."

 With reference to the power of an attorney to bind his client, although, ordinarily speaking, it is well established that, especially in what may be termed purely procedural

matters, either by written, or by oral stipulation, or by admissions of fact made by him in open court, an attorney is fully authorized, nevertheless, when the subject-matter of the litigation is involved, the attorney is not privileged by oral stipulation only to directly impair the substantial rights of his clients in that regard. With respect thereto, the prevailing principle of law is aptly stated in 6 Corpus Juris, page 647, as follows: ''Subject to the rule that an attorney cannot compromise his client's case or surrender his substantial rights, an attorney may make any agreement or stipulation which appears, in the progress of the case, to be necessary or expedient for the advancement of his client's interest; . . . ''

Again, as far as the rights of the client are concerned, in the same volume of Corpus Juris, at page 643, the rule is thus stated: ''The cause of action, the claim or demand sued upon, and the subject matter of the litigation are all within the exclusive control of a client; and an attorney may not impair, compromise, settle, surrender or destroy them without his client's consent.''

At page 386 of volume I of Thornton on Attorneys at Law it is said: ''An attorney certainly cannot bind his client by any unauthorized act which amounts to a total or partial surrender of a substantial right.''

And with respect thereto, as is attested in 3 California Jurisprudence, page 667, the general rule within this state is that ''an attorney cannot, by virtue of his general authority, bind his client by any act which amounts to a surrender in whole or in part of any substantial right. In harmony with this rule, it has been held in California that an attorney cannot stipulate to pass his client's rights or title to land which is the subject-matter of the litigation. Similarly, it primarily rests with the client and not his attorneys to decide whether or not an amount tendered by the adverse party should be accepted in full satisfaction of a claim for money due.''

The principal issue involved in the appeal in the case of *Merritt* v. *Wilcox,* 52 Cal. 238, was whether, as against the allegations in the answer to the complaint, an attorney could bind his client, who was the defendant in the action, by his oral stipulation, not entered in the minutes of the court, to the effect that if the plaintiff should recover judgment, it would be payable in gold coin. The ruling made by the

Supreme Court was directly against the proposition that the attorney had any such authority. After quoting section 283 of the Code of Civil Procedure, wherein, in part, it is provided that the authority of an attorney includes that of binding his client "in any steps of an action or proceeding by his agreement filed with the clerk, or entered upon the minutes of the court, *and not otherwise*"; and conceding that in purely procedural matters in the course of the trial of an action the client might be bound by an oral stipulation of his counsel, the court said:

"But however this may be, the alleged agreement in controversy here is not one of the character supposed, nor one as to which there is any conceivable reason for a relaxation of the statute. While it did not purport to let judgment go for the plaintiff, it, nevertheless, conceded to him, in case of success, a judgment more favorable, more valuable, and, in effect, for a greater sum of money, than he might otherwise obtain. It also operated, by necessary consequence, a substantial amendment of the pleadings; it practically deprived the defendant of the benefit of an important defense interposed by him, and upon which, upon the record, and except for the supposed stipulation, he was entitled to rely. The actual rights of the parties cannot be thus made to rest on the mere verbal agreements of counsel, casually made, and not entered of record. To do so would be to abrogate the statute entirely."

To the same effect, see *Bare* v. *Parker*, 51 Cal. App. 106 [196 Pac. 280], wherein on the trial of the action the principal issue was whether the subject-matter of the litigation was community property. It appears that: "Nearing the close of the trial counsel for intervener proposed several stipulations that were assented to by counsel for plaintiff. One was that 'the property . . . was held by . . . (husband and wife) . . . as tenants in common'. Undoubtedly assent was unwittingly given to this stipulation. It negatives the theory of plaintiff's case and would have stipulated him out of court. The trial court appreciated the situation and properly refused to permit an inadvertence or want of attention on the part of counsel to work what he conceived to be an injustice. 'A trial court does not sit as a mere referee in a contest of wits between counsel in the case, but that it is not only within his province, but is his duty, to see that as nearly as possible

the issues shall be disposed of on their merits. . . . ' (*Farrar* v. *Farrar,* 41 Cal. App. 452 [182 Pac. 989].)''

Nor does the fact that an admission or stipulation was made in open court by an attorney in the presence of his client necessarily vary the rule. In the case of *Davidson* v. *Gifford,* (1888) 100 N. C. 18 [6 S. E. 718], it was said:

"Merely casual, hasty, inconsiderate admissions of counsel in the course of a trial do not bind the client. They are not intended to have such effect, nor does the nature of the relation of attorney and client produce such result. *And this is so, although the client be present when such inconsiderate admissions are made.* It would be rude, indecorous, disorderly, and confusing if the client should interpose to correct his counsel, and disclaim his authority to make such admissions. Neither the court, counsel, nor any intelligent person expects him to do so. And, for the like reason, the client, if examined as a witness, is not required to disclaim such admissions of his attorney, unless he shall be examined by the opposing party for that purpose."

From a consideration of the foregoing precedents and authorities, it becomes manifest that even conceding the fact that in the instant case the attorney who represented plaintiff made the statement, in effect, that his client would be satisfied with a "nominal" judgment in his favor, such stipulation (if it may be so considered) was unauthorized, was not "filed with the clerk", nor "entered upon the minutes of the court", and consequently was not binding on plaintiff.

But even if, as against the great weight of authority in the premises, for the sake of argument only it may be assumed that the statement made by the attorney for plaintiff to the effect that his client would be satisfied with a judgment in his favor for nominal damages only was binding upon the plaintiff, still a judgment for the sum of $200 in favor of plaintiff would not be in compliance with what possibly might be regarded as a stipulation on the part of plaintiff, in that such a sum is far greater than a "nominal" judgment, and consequently would have to be considered as having been awarded in violation of the "nominal" judgment stipulation, and if sustainable, would have to rest solely upon the theory that it was a judgment which was intended to be compensatory for the actual damages which plaintiff had sustained.

With respect to the amount of money which properly may be considered as an award of "nominal" damages, it is said in 17 Corpus Juris, page 727: "From the definition of the term it is apparent that the amount awarded as nominal damages must be some trivial sum, although the term carries no suggestion of certainty as to amount."

"Nominal damages" are defined in Bouvier's Law Dictionary as "a trifling sum awarded where a breach of duty or an infraction of the plaintiff's right is shown, but no serious loss is proved to have been sustained"; or "where, from the nature of the case, some injury has been done, the amount of which the proofs fail entirely to show". A "trifling sum" is said to be "a penny, one cent, 6¼ cents".

On the distinction between nominal and compensatory damages, it is said in 17 Corpus Juris, page 720: "Nominal damages are so called in contradistinction to actual, substantial, or compensatory damages. They are given not as an equivalent for the wrong but in recognition of a technical injury, and by way of declaring the right. Hence they are not the same as damages which are small in amount, and in reality are damages in name only, not in fact, or, as it has been otherwise stated, are in fact the same as no damages."

In the case of *Broads* v. *Mead & Cook,* 159 Cal. 765 [116 Pac. 46, 47, Ann. Cas. 1912C, 1125], a judgment for $100, based upon a finding that plaintiff was entitled to nominal damages only, was reduced on appeal to one dollar. The court said: "A finding of nominal damages only, does not warrant a judgment for one hundred dollars. The law does not regard trifles, and if the judgment were for a small sum avowedly as nominal damages, we might not be disposed to reverse or modify it. But one hundred dollars is a substantial recovery and does not come within the definition of nominal damages. (*Maher* v. *Wilson,* 139 Cal. 514, 520 [73 Pac. 418].) One dollar is the amount usually adjudged where only nominal damages are allowed."

In *Chowchilla Nat. Bank* v. *Nilmeier,* 83 Cal. App. 18 [256 Pac. 298], an award of $100 damages was stricken from the judgment on appeal, the court holding that only "nominal" damages, "a penny, one cent, 6¼ cents", should be allowed. And in the case of *Mahoney* v. *Beatman,* 110 Conn. 184 [147 Atl. 762, 66 A. L. R. 1121], where the trial court erroneously concluded that plaintiff was entitled to nominal damages only

and gave him judgment for $200, the Supreme Court reversed the judgment saying, ''Such a judgment is for substantial, not nominal, damages.''

It therefore becomes clear that, in legal effect, the trial judge must have disregarded the ''stipulation'' that nominal damages might be awarded to plaintiff; and in consequence, that the judgment in the sum of $200 was intended to represent the actual damages that plaintiff had suffered in the premises. And as hereinbefore has been indicated, the sum of $200 was wholly inadequate for that purpose.

The judgment is reversed, with directions to the trial court to retry the cause on the issue of damages only, which were sustained by plaintiff.

Doran, J., concurred.

YORK, J., Concurring.—I concur in the judgment of reversal, but I believe that the cause should be fully retried, and on the retrial that the court should not be limited to the amount of damages alone, as I believe the record is insufficient to justify such limitation.