[Civ. No. 4870. Second Appellate District, Division Two.—April 9, 1928.]

BUFFALO WEAVING AND BELTING COMPANY (a Corporation), Respondent, v. BOYLE MANUFACTURING COMPANY (a Corporation), Appellant.

G. C. DeGarmo and H. B. Cornell for Appellant:

Fredericks, Hanna & Morton for Respondent.

STEPHENS, J., *pro tem.*—This is an action for damages for the alleged breach of a contract, under which defendant agreed to purchase a large quantity of web automobile luggage straps from plaintiff. The contract is based on an order and correspondence had between plaintiff and defendant directly and through plaintiff's agent, with headquarters in San Francisco. For convenience we shall occasionally refer to plaintiff as the "Weaving Company," to defendant as "Boyle Company" or "Boyle" and to the San Francisco representative of plaintiff as "Agent." Judgment went for plaintiff according to the prayer of the complaint, and defendant appeals.

The case is here on a bill of exceptions, which contains some oral testimony and a number of letters. For convenience the essentials of the letters have been condensed under our own numbers, which do not conform to numbers used in the transcript.

The negotiations begin with letter No. 1, from Agent to Boyle, April 22, 1920. Agent solicits business for his principal, Weaving Company herein, and states that Weaving Company "would like to have . . . sample of your trunk strap." Advises it would be good time to place order for next season, with shipment later.

Letter No. 2, April 23, 1920. Boyle replies, asking quotations on 50,000 to 75,000 for future delivery; 10,000 immediate delivery.

Letter No. 3, April 27, 1920, Agent to Boyle. He has communicated with his principal for low quotations and "we

are pretty well sold up on trunk straps, but if we should take on our [*sic*] order for a quantity of 50,000 to 75,000 for future delivery, I assume it would mean some time in September or October, and that would give us ample time to get these made up.''

Letter No. 4, May 10, 1920, Agent to Boyle, quoting $40 per gross f. o. b. Buffalo, subject to change. Wire reply so buckle can be arranged for.

Letter No. 5, May 11, 1920, Boyle Company to Agent: ''We are in receipt of your favor of the 10th inst. quoting $40.00 per gross f. o. b. Buffalo on quantities of 50,000 to 75,000 $1\frac{1}{4}''$ 6' Trunk Straps, as per sample submitted, and herewith enclose our order #280 covering 80,000 of same. We would ask you to kindly wire this order in to your factory and ask them to make a 'special rush' of the 10,000 referred to in order. The order is, of course, placed on the understanding that these Straps will match up with the samples submitted.'' The order was dated May 11, 1920, inclosed with letter No. 5, and, omitting salutation, signature and two or three additional but nonessential requirements under subtitle ''Important Instructions,'' is as follows:
''Enter our order as follows, for shipment . . .

| | |
|---|---|
| Route via Santa Fe at Chicago | |
| Terms ..................... | Order No. 280 |
| Quantity Description | |
| 80,000 6' Straps made from | |
| 1-$\frac{1}{4}$'' Russet Trunk | |
| Web | $40.00 per gross |
| Complete with nickle plated | fob Buffalo. |
| buckle and tip; | |
| as per sample submitted. | |

''NB—10,000 of the above to be shipped very earliest possible—balance later.

''Important Instructions:

Please acknowledge receipt of this order, show price and state when shipment will be made.''

Letter No. 6, May 13, 1920, Agent to Boyle, acknowledges order.

Letter No. 7, May 14, 1920, Agent to Boyle. Received information permitting him to assume 10,000 will be shipped within a month.

Letter No. 8, Weaving Company to Boyle, May 18, 1920. Acknowledgment of order No. 280. In good position to get off first lot of straps. Only waiting for express shipment of buckles to rush forward. Fortunate having webbing on hand.

Letter No. 9, May 24, 1920, Agent to Boyle. Sending to-day's mail sample web strap. Different from stock strap; therefore would like approval.

Letter No. 10, May 26, 1920, Boyle to Agent. Strap O. K. "In regard to shipment of this order, as previously advised, we wish 10,000 straps shipped at the earliest possible moment. The balance of the order, however, we do not want shipped until about the first of next year. . . . We would ask that you take up the matter of shipping instructions with us some time about the first of December. . . . We are wondering if we would be protected on this order in the event of a decline in price prior to date of shipment."

Letter No. 11, May 28, 1920, Agent to Boyle. Order simply stated, as to delivery after first 10,000, "balance later." Agent quite sure Weaving Company inferred they were to make up and ship from time to time as completed. Weaving Company arranging for raw material on this basis. Writing as to protection against factory price decline. "Manufacturing conditions abnormal; help and raw materials scarce. If you could permit us to make monthly shipments, beginning about July 1st, you would then be sure of a sufficient quantity to take care of your requirements, instead of making shipment to you of the entire order complete, some time after December 1st."

Letter No. 12, June 2, 1920, Boyle to Agent. Note you have written Weaving Company about price decline. We appreciate factory position. Apart from the 10,000 straps will need none until spring. "We do not think it unreasonable to ask you to protect us against your own decline, a practice quite common in our own business. . . . In regard to shipping instructions, we could agree to your making monthly shipments commencing about the 1st of October and ending January 1st, 1921."

Letter No. 13, June 4, 1920, Agent to Boyle. Have written Weaving Company about protecting you against factory

price decline and reason you ordered early was to be sure having straps in time. "I fully agree with you that as a rule, orders of this kind are taken with a protection against the manufacturer's own decline. I am quite sure there will be no question about this, but would prefer to have this come direct from my principals. . . . Also note your shipping instructions, commencing about October 1st/20 and ending January 1st/21."

Letter No. 14, June 7, 1920, Agent to Boyle. "Our people inform me they will protect you against their own decline, although they say you must take into consideration the fact that they . . . have had to buy this material outright . . . and can get no protection . . . Now further with reference to shipment, they state it would be some little time before they complete the first 10,000 straps, and in view of increasing freight congestion . . . they feel it would be well for you to have these monthly shipments coming along to you, and in that way you would be assured of having the straps on hand; whereas if you call upon us to furnish the entire quantity in two or three months we might be held up owing to . . . contingencies that might arise . . . Furthermore, it would mean we would have to accumulate a lot of web for the next five or six months, before we start on your order. Inasmuch as we are going to protect you in our own decline in price, you will undoubtedly yield to our point of making monthly shipments, as we shall certainly not crowd you with an enormous amount of goods each month. When they wrote their letter they did not have my letter with reference to beginning shipments Oct. 1st and ending about January 1st, '21. I am in hopes, however, when they receive these instructions, they will be able to make up the straps and get them ready to ship monthly, beginning Oct. 1st and completing the entire order by January 1st, '21. If, however, you will permit us to begin shipments a little earlier, will be glad to have you advise us."

Letter No. 15, June 15, 1920, Agent to Boyle. "They [respondent company] feel inasmuch as you are permitting them to make monthly shipments beginning October 1st and ending Jan. 1st, 1921, this is very satisfactory, and as I

have already informed you we would protect you in the event of a decline in our own price.''

Letter No. 16, July 9, 1920, Agent to Boyle. Refers to another order.

Letter No. 17, October 28, 1920, Weaving Company to Boyle. Adjusting shipments to date at $32 per gross.

No. 18, telegram, Boyle to Agent, November 30, 1920. ''Cancellation of many orders for automobile accessories necessitate our cancellation of all orders on your files unshipped at this date.''

Letter No. 19, November 30, 1920, Boyle to Weaving Company. Encloses telegram sent Agent. Regrets necessity of cancellation because of lack of orders.

Letters No. 20 and No. 21, November 30 and December 6, 1920, Weaving Company to Boyle. Acknowledge receipt of cancellation telegram and advise consultation with Agent. ''Asking him to take the matter up with you, as he did the original order.''

Letter No. 22, December 7, 1920, Agent to Boyle. Gives history of deal and argument. ''At the time you placed this order with us, it was undoubtedly placed in good faith, and our people accepted the same at a fixed price, with the understanding that in the event of a decline on our own price, we would protect you and give you the benefit of same. . . . However, we gave you the benefit of a decline of 20% unsolicited, and it has been our intention that in the event of our making further declines that we continue to give you the benefit of same on unfilled portion of your order. Now our people do not feel as though they should accept cancellation of this order, as you will recall when it was placed we had to commit ourselves for the hardware, which we purchased at a fixed price, without any protection in the event of a decline by the manufacturer. We have all this material in our plant, and all paid for. Now there is no doubt but what you are going to want these straps as soon as business revives, which we all hope will be shortly after the first of the year. Our people feel you should be willing to allow the order to stand on our books for future shipment. We have a lot of straps all made up for shipment this month, and trust you will permit us to send them along, as they are made up special to your order.''

Letter No. 23, December 11, 1920, Boyle to Agent. "Your letter of the 7th inst. regarding cancellation of our order on made up web straps received and contents noted. Your proposal to keep this order on your books for future shipment is agreeable to us, but we wish it to be understood that no part of this order is to be shipped without written instructions from us to that effect." Hopes business conditions will soon permit permission to ship part of order.

Letter No. 24, December 13, 1920, Agent to Boyle. Appreciate your position. Believe revival of business about first of year. Believe Boyle probably be asking for shipments by first of year. "If there is any further declines our people propose to give you the benefit of same."

Letter No. 25, December 21, 1920, Weaving Company to Boyle. "We have heard from our Mr. Wirtner [Agent] with reference to your order, and have noted the correspondence which you have had with him. We are very glad indeed that you have decided to keep this order on our books, and we earnestly hope that conditions will improve so that you will find the usual heavy demand for your goods. You will see that we are going to protect you on declines and shall do all in our power to give you good service in every way."

Letter No. 26, October 5, 1921, Agent to Boyle. Complains about not receiving orders. Reminds Boyle buckles purchased. Asks for webbing business.

Letter No. 27, November 12, 1921, Weaving Company to Boyle. Calling attention to special buckles carried for Boyle's work, and asks for orders.

Letter No. 28, November 21, 1921, Boyle to Agent. Checked over stock. " . . . we have . . . enough to give us a good start for the coming season. We will, however, undoubtedly be in the market later on for a further supply of this commodity, and you will certainly hear from us as soon as the writer is able to get a better line on what our requirements are likely to be."

Letter No. 29, November 23, 1921, Agent to Boyle. Appreciate advising conditions. Very much like to receive your order, but very glad to hold special buckles until your requirements bring you in the market.

Letter No. 30, February 11, 1922, Weaving Company to Agent. Expresses disappointment regarding Boyle orders, and says: "Their promise to give us an opportunity of figuring when they are in the market does not sound good to us; we want some relief. . . . Our loss on the web is not so serious as the buckles, as we have, of course, other uses for the webbing. If he can't use the straps we want shipping instructions on the buckles which were ordered especially for him. We want no profit and are willing to bill them out to him at cost."

Letter No. 31, February 15, 1922, Agent to Boyle. About the same as letter No. 30. Suggests buckles be taken off their hands.

Letter No. 32, February 18, 1922, Boyle to Agent. Declines to receive buckles. Hopes for revival of business. "Rest assured that we will place no strap orders without consulting you."

Letter No. 33, March 1, 1922, is a bill for the buckles, sent to Boyle. (But buckles were not shipped.)

Letter No. 34, March 8, 1922, Boyle to Agent. Returns buckle invoice. Says charge not in order at this time. Will give additional order in line with agent's order of November 23d.

Letter No. 35 (no date), Weaving Company to Boyle. Recites history of deal. Demands shipping instructions for rest of order to specify shipping within three months after receipt of instructions at the factory decline price, if any, not to exceed $40 per gross at time of shipment. "If we do not receive shipping instructions from you as above outlined within the time mentioned, we shall consider you in default and that you have breached your contract with us, and that the modification of the contract to guarantee you against our decline in price having been made on your agreement to take the straps out in a certain time, and you not having done so, that such modification is of no further force or effect, and that the original agreement to pay $40.00 per gross is reinstated, and that our damage will be the difference between such $40.00 per gross and the market price, whatever it may be at the time of your default."

Letter No. 36, April 25, 1922, Boyle to Weaving Company. Acknowledges receipt of last letter from Weaving

Company. Surprised attitude assumed. States they are purchasing no straps from other source. Assures Weaving Company will purchase from them when in need.

Letter No. 37, February 7, 1923, Boyle to Weaving Company. States conditions are such that they can use 3000 more straps, and orders same.

Letter No. 38, February 16, 1923, Weaving Company to Boyle. Refers to former correspondence and states they have placed the matter in attorney's hands.

No goods other than the 1,400 gross delivered and paid for were ever shipped. Suit was brought on the 13th of February, 1923, whereby plaintiff sought to recover the sum of $6,755.50 damages, estimated by deducting the market price of straps as of the date of defendant's letter of April 25, 1922, from the contract price. According to the complaint and the testimony of the president of the plaintiff corporation, this sum as damages is arrived at as follows: $40 per gross contract price, less $25.25 per gross market price, times 458 gross undelivered, equals $6,755.50.

The pleadings make it unnecessary for us here to consider the element referred to in the correspondence as "factory decline in price."

■ Appellant herein (Boyle Company) contends that the original contract was voluntarily nullified and that another and different contract became effective by the exchange of the cancellation telegram, the reply thereto and appellant's letter of December 11, 1920. The trial court found that the original contract remained in force, and gave judgment in accord with the pleadings and plaintiff's theory of the case.

We are of the opinion that the original contract was never nullified but remained in full force and effect, except that the time of shipping the goods was extended for a reasonable period and that such reasonable time had expired on the 15th of April, 1922, the date of letter declaring a breach of the contract.

■ George L. Mathewson, president of the respondent company, was called as a witness for the purpose of proving the market value of the straps in question, and after proper qualification was asked: "What was the market price of the straps covered by the Boyle Manufacturing Company contract on April 15, 1922?" To which counsel for appellant

interposed the following objection: "We object to that question and also the answer on the ground that, it is immaterial, irrelevant and incompetent for the reason that under the pleadings the market value is not the basis for the fixing of the damages and is not material." The court overruled the objection, with leave to move to strike. On pages 77 and 78 of the transcript is the following: "At the conclusion of the hearing defendant moved to strike out all of the testimony of the witness George L. Mathewson concerning the market value of such straps and buckles in 1922 on the ground that it was incompetent, irrelevant and immaterial, in this that no breach of contract was shown to have been created at that time, and the court thereupon denied the motion." Mr. Mathewson's testimony was as follows: "A. [to question above quoted]: $25.25. Q. Per gross? A. Per gross. Q. Do you know the market price during the balance of the month of April, 1922? A. The same. Q. And you do know it, and that was the price? A. Yes. Q. Do you know the market price during May and June, 1922? A. $25.25. Q. And that is the market price f. o. b. Buffalo? A. Yes. Q. So that the difference then between the contract price of $40 and the market price of $25.25 per gross is $14.75 a gross? A. I base my opinion of market value during this period from August 15th, 1922, to July, 1922 [sic] partly upon sales of straps similar to those covered by the Boyle Manufacturing Company contract." He then testified that sales were made by his (respondent) company of similar straps on June 23, July 19, June 5, June 30, May 15 and June 24, 1922, at $25.25 per gross, and said: "Those dates I have just given in my answer to the last question are the dates upon which sales were made by the Buffalo Belting and Weaving Company of similar straps to those covered by the Boyle Manufacturing Company contract at the price I have stated, f. o. b. Buffalo. Those were sales made in the usual course of business." He further testified that there were other sales on or prior to April 15, 1922, to wit: April 8, May 26, April 24, April 18, April 11, and March 28, 1922, at $25.25 per gross; and that "the market value of these straps as covered by the contract from March 1 1922, to August 1, 1922, was $25.25 per gross, f. o. b. Buffalo."

We believe the objection to the original question which elicited this testimony was good and should have been

sustained; but when counsel for appellant moved to strike Mathewson's testimony he seems to have narrowed the ground of his objection to one point, viz., that *the contract was not breached as of the date stated in the question*—April 15, 1922. Since the date of the breach of the contract was determined by the trial court as of April 15, 1922, and we think correctly so, and this was the sole basis of the motion, the denial thereof was correct. But we are unable to see what use can be made of this evidence.

■ Paragraph II of appellant's specifications of the insufficiency of the evidence to support the findings is as follows: "The evidence is insufficient to justify paragraph IV of the findings reading as follows: 'That all of the allegations of paragraph IV of plaintiff's complaint are true.' The evidence shows that the following allegations of paragraph IV of plaintiff's complaint are untrue: 'And by reason of the facts herein alleged the plaintiff has been damaged in the sum of six thousand seven hundred fifty-five and 50/100 dollars ($6,755.50).' " And under the subhead "Assignment of Errors" appears the following: "The court erred in its rulings as follows: '3. In concluding as a matter of law that said plaintiff is entitled to a judgment against said defendant in the sum of $6,755.50, or any other amount.' " The loss sustained by respondent, in the circumstances of this case, was clearly one of loss or profits— the difference between the cost of manufacturing in the finished, ready to deliver state and the contract price. The measure of such damages would have to be ascertained under section 3300 of the Civil Code and not under section 3353 of the Civil Code. (*Utter* v. *Chapman,* 38 Cal. 659, 665; *Connell* v. *Higgins,* 170 Cal. 541, 549 [150 Pac. 769]; *Hale* v. *Trout,* 35 Cal. 229; *Cederberg* v. *Robison,* 100 Cal. 93 [34 Pac. 625]; *Johnson* v. *Hinkel,* 29 Cal. App. 78 [154 Pac. 487]; *Lund* v. *Lachman,* 29 Cal. App. 31 [154 Pac. 295].)

■ There is no contention that the straps were made up, except a monthly installment of them for December, 1920. There is no evidence that they were ever all made up and actually sold in the open market so as to afford the smallest possible loss. On the contrary, the only evidence on the point comes through Mr. Mathewson, president of the respondent corporation: "We did not purchase any webbing to fill the contract. We would have webbing. We don't

know when we disposed of it, but we simply carried it in stock for years afterwards and sold it out in small lots from time to time. The entire stock of buckles we still have on hand. We have given them to our branch offices and tried to dispose of them in that way, but none of them have been sold.'' We think there is no evidence to sustain the finding complained of and above quoted, and no evidence to sustain the judgment for the sum determined upon by the court or any other definite sum.

Judgment reversed.

Works, P. J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 7, 1928, and a petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 7, 1928.